**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| SOELECT, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>HYUNDAI AMERICA TECHNICAL<br>CENTER, INC.,<br><br>            Defendant. | No. 22-cv-01342<br><br>District Judge Jeremy C. Daniel<br><br>Magistrate Judge Sheila M. Finnegan |

**DEFENDANT HYUNDAI AMERICA TECHNICAL CENTER, INC.'S MOTION FOR
PARTIAL RECONSIDERATION & MEMORANDUM IN SUPPORT THEREOF**

Defendant Hyundai America Technical Center, Inc. ("HATCI") respectfully moves for partial reconsideration of the Court's order granting in part and denying in part Plaintiff Soelect, Inc.'s ("Soelect") Motion for Summary Judgment. *See* Dkt. No. 155 (the "MSJ Order").

**I.      INTRODUCTION**

HATCI moves for reconsideration of a single aspect of the MSJ Order, namely, the grant of summary judgment to Soelect on the question whether HATCI engaged in "characterization testing" prohibited by the parties' material transfer agreement ("MTA"). *See id*. at 29–30.  In granting summary judgment, the Court concluded there was "no genuine dispute that HATCI breached the MTA by allowing SEM testing to be performed on Lithium-X samples." *Id*. at 30. HATCI respectfully submits that this conclusion was incorrect.  HATCI adduced evidence that the SEM testing was conducted *not* on Soelect's Lithium-X samples, but rather on lithium deposits that accumulated atop the samples after a charging cycle, thereby giving rise to a genuine factual dispute precluding summary judgment.

As a threshold matter, both parties acknowledge that lithium deposits accumulate atop anodes after a charging cycle. And Soelect acknowledged that the SEM images revealed deposits of that nature. The parties diverged, however, on the question whether the SEM imaging revealed anything regarding the Soelect sample *itself*. HATCI adduced significant evidence that the testing was conducted only on the lithium deposits—which came from HMC's own propriety lithium cathode—and not on the Soelect sample. Soelect's sole substantive response to that evidence was to (a) call it "simply false" and (b) cite five lines from the deposition of a HATCI expert that Soelect mischaracterized as effectively conceding liability on this issue. But those lines of testimony at most indicate that the SEM images were of the *modified* surface of a Soelect sample, which in turn revealed nothing about the sample's characteristics. Soelect will continue to argue otherwise. But at base, the parties' disputes over the meaning to be drawn from the record evidence is, at best for Soelect, a quintessential factual dispute not subject to summary judgment.

Accordingly, HATCI respectfully requests that the Court reconsider its decision granting Soelect summary judgment as to whether the SEM imaging in question violated the MTA.

## II.    STANDARD OF REVIEW

Courts have "sweeping authority" under Civil Rule 54(b) to reconsider interlocutory orders, including partial summary judgment rulings. *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012); *see Citizens Ins. Co. of Am. v. Mullins Food Prods.*, No. 22-cv-1334, 2024 WL 809111, at *1 (N.D. Ill. Feb. 27, 2024) (granting motion to reconsider summary judgment ruling). A motion for reconsideration should be granted where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

### III.    ARGUMENT

Given the Court's familiarity with this litigation, HATCI limits its discussion here to the record evidence pertinent to the issue for which it seeks reconsideration.

As an initial matter, no one—not even Soelect—has claimed that the MTA prohibits SEM imaging and testing of HMC's *own* material.  *See* Dkt. No. 136 (Soelect MSJ Reply) at 11 ("The MTA prohibited SEM imaging of *Soelect's* proprietary Li-X material.") (emphasis added).  Rather, as this Court recognized, "[t]he MTA places restrictions on HATCI's use of Proprietary Materials," i.e., Soelect's materials protected by the MTA, and "identifies SEM as a prohibited means of testing [those] Proprietary Materials."  Dkt. No. 155 at 4, 29; *see also id.* at 4 (quoting MTA, § 2).  And imaging conducted on material *atop* and obscuring the Proprietary Material does not amount to "characterization testing" of that Proprietary Material.  *See id.* at 4 (quoting MTA, § 2).  Concluding otherwise would be tantamount to finding that imaging or testing snow that accumulated on a driveway in the depths of winter is tantamount to imaging or testing the driveway underneath.

Thus, the dispositive question is whether characterization testing, in the form of SEM imaging, was actually conducted on "Proprietary Materials," meaning on *Soelect's* protected materials.  And there is, at the very least, a material fact dispute as to whether that happened.  *E.g.*, Dkt. No. 125 (HATCI's Resp. to SOF) at 33–36.

In holding otherwise, the MSJ Order states that "HATCI does not dispute that SEM testing was conducted on the samples in question."  Dkt. No. 155 at 30.  To be clear, HATCI *does* dispute "that SEM testing was conducted on the samples in question."  *Id.*  In fact, and as HATCI has maintained, the SEM testing was not "on the [Soelect] samples," *id.*; rather, the imaging was of HMC's own propriety lithium cathode material that had accumulated *on top of* Soelect's samples after charging.  *See, e.g.*, Dkt. No. 125 (HATCI Resp. to SOF) at 33–34 (disputing Soelect's

Fact ¶ 62 because, *inter alia*, "[t]he SEM images showed lithium deposits that had accumulated on top of a Soelect anode after a charging cycle," and the deposits "originated from HMC's cathode"); Dkt. No. 124 (HATCI MSJ Mem.) at 14; Dkt. No. 145 (HATCI Reply) at 7–8; Dkt. No. 138 (Soelect's Resp. to SOF) at 29 (HATCI Fact ¶ 67: "HMC provided Soelect with SEM images of lithium deposits from HMC's cathode that had accumulated on top of the anode after a charging cycle"). And testing of material sitting atop Soelect's sample cannot amount to "characterization testing" of the sample itself. *Cf.* Dkt. No. 138 at 33 (Soelect's Resp. to HATCI's Fact ¶ 70: admitting that the images did "not show the chemical composition of the Lithium-X material").

HATCI marshaled evidence showing that fact—i.e., any testing via SEM imaging was only of lithium deposits generated from HMC's own cathode—including Dr. Jongchan Song's averment in his 2023 declaration that:

> [His team] voluntarily provided Soelect scanning electron microscopy ('SEM') images of lithium deposits *on top of* a single Soelect Gen-2 anode sample after a charging cycle to give Soelect more information regarding how its sample reacted when connected to HMC's material. Soelect's sample was not observed in the images, as the SEM was taken after about 20 micro thick of lithium (which originated from HMC's cathode) was *deposited on top of* Soelect's sample.

Dkt. No. 125-7 (2023 Dr. Song Decl.) at ¶ 6 (emphasis added); *see* Dkt. No. 125 (HATCI's Resp. to SOF) at 33–36 (citing same, in responses disputing Soelect's Fact ¶¶ 62–64). Dr. Song reiterated those points in his 2024 declaration, averring that "with respect to SEM, the only SEM imaging our Team conducted was the imaging of the lithium deposits on the one [Soelect] sample." Dkt. No. 146-2 (2024 Dr. Song Decl.) at ¶¶ 4, 6, 8; *see also* Dkt. No. 146 (HATCI's Resps. to Soelect's Statement of Additional Facts) at 12 (citing 2024 Dr. Song Decl.). Dr. Samuel Seo averred similarly in his 2021 affidavit: "We examined *Lithium deposition on* one and only one of the samples using scanning electron microscopy[.]" Dkt. No. 122-18 (2021 Dr. Seo Affidavit) at

¶ 3 (emphasis added); *see* Dkt. No. 122 (HATCI SOF) at ¶ 75 (citing 2021 Dr. Seo Affidavit); *see also* Dkt. No. 146-3 (2024 Dr. Seo Decl.) at ¶ 13.

Likewise, HATCI's expert Dr. Von Sacken opined "that the SEM images of the Cycled Gen 2 Anode in fact show plated lithium metal deposited on the surface of the LiX Anode." Dkt. No. 125-13 at 4; *see also* Dkt. No. 125 at 35–36 (HATCI Resp. to Soelect's Fact ¶ 64). And HATCI proffered additional evidence showing that the SEM imaging itself did not, in fact, reveal the characteristics of Soelect's materials—which in turn further supports the conclusion that testing was conducted not "on the samples," but rather "on" the material accumulated *atop* a Soelect sample. *See, e.g.*, Dkt. No. 125 at 33–34 (HATCI's Resp. to Soelect's Fact ¶ 62, disputing "that the email 'included SEM images of Soelect's product'": "The SEM images showed lithium deposits that had accumulated on top of a Soelect anode sample after a charging cycle." (citing Dkt. No. 125-7 at ¶ 6)); *id.* at 33–38. In sum, HATCI offered significant evidence—at the very least, evidence sufficient to forestall summary judgment—that the testing via SEM imaging in question was conducted merely on *HMC's* own material that formed atop a Soelect sample. *See generally id.* at ¶¶ 62–66.

For its part, Soelect acknowledged that "lithium deposits" appear "on an anode after a charging cycle" and that that the SEM images "showed"—at least in part—"lithium deposited on Lithium-X after a charging cycle." Dkt. No. 107 (Soelect MSJ Mem.) at 6 n.1. But it disputed HATCI's assertion that the images showed *only* the characteristics of the deposits atop the Soelect sample. *See* Dkt. No. 136 (Soelect MSJ Reply) at 11–12. Soelect's substantive response to HATCI's evidence showing that the testing was only of HMC's material, however, boiled down to deeming HATCI's account "simply false." *See id.* at 11 & n.5. But that response—resting on a series of disputed assertions of fact—simply confirms that, at the very least, there is a disputed

issue of fact as to which party is right. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("[the court's] job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts"); *compare* Dkt. No. 136 (Soelect MSJ Reply) at 11–12 (citing Soelect's Fact ¶¶ 63–66, 70) *with* Dkt. No. 125 (HATCI's Resp. to SOF) at 33–38, 40 (disputing Soelect's Fact ¶¶ 63–66, 70).

For example, Soelect asserted as fact that "HMC captured at least six images of Soelect's Lithium-X using an SEM." Dkt. No. 125 at 34 (Soelect's Fact ¶ 63). HATCI disputed this assertion because, *inter alia*, "[t]he SEM images showed lithium deposits that had accumulated *on top of* a Soelect anode sample after a charging cycle," citing Dr. Song's declaration. *Id.* at 35 (HATCI's Resp. to Soelect's Fact ¶ 63, citing Dkt. No. 125-7 at ¶ 6); *cf.* Dkt. 155 at 14. Concluding that Soelect is right on its assertion of fact regarding the SEM images requires weighing and rejecting Dr. Song's competing testimony—which is not the province of summary judgment. *See Miller*, 761 F.3d at 827.

Similarly, Soelect asserted as fact that "HATCI's expert, Dr. Von Sacken, concedes that the SEM images included high magnification images of Soelect's material," citing five lines from his deposition. Dkt. No. 125 at 35 (Soelect's Fact ¶ 64). HATCI disputed this fact too, citing Dr. Von Sacken's opinions and Dr. Song's testimony. *Id.* at 35–36 (HATCI's Resp. to Soelect's Fact ¶ 64, citing, *inter alia*, Dkt. No. 125-13 at 5, 10). And in any event, those five lines of testimony do not establish, as the Court found, that "SEM *testing* … showed the 'cycled surface of the Lithium-X material.'" Dkt. No. 155 at 6 (emphasis added). Rather, Dr. Von Sacken merely noted that, based on his review, limited portions of the SEM images showed the "cycled surface of LiX," Dkt. No. 108-35 at 51:10–14; but, importantly, from that modified material, it was "'not

6

possible to determine … the composition or structure of the Gen 2 LiX Anode, or the method of manufacture of the Gen 2 LiX Anode,'" Dkt. No. 125 at 36 (HATCI's Resp. to Soelect's Fact ¶ 64, quoting Dkt. No. 125-13 at 10). In other words, even to the extent Dr. Von Sacken noted that that the "cycled surface" may be visible, the SEM images did not reveal any characteristics of the original sample. *Id.*

Soelect's own witnesses similarly conceded that one could not determine the chemical composition of the sample from the SEM images HMC took. *See* Dkt. No. 138 at 33–34 (Soelect's Resp. to HATCI's Fact ¶ 70 providing, *inter alia*, "Soelect admits that the images do not show the chemical composition of the Lithium-X material. … Soelect admits that the SEM images, standing alone cannot be used to determine the method Soelect uses to manufacture Lithium-X."). Siding with Soelect to conclude otherwise—i.e., that the SEM imaging amounted to characterization testing of the Soelect samples—requires rejecting the broader context of Dr. Von Sacken's other testimony, the admissions of Soelect witnesses, and the testimony of HMC witnesses. That type of evidentiary weighing is not the province of summary judgment. *See Miller*, 761 F.3d at 827.

While a jury might be able to reject HATCI's evidence and side with Soelect to conclude "that SEM testing was conducted on the samples in question," Dkt. No. 155 at 30, that is a question for trial. And on this record, it is not a question amenable to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment should not be granted when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Accordingly, HATCI respectfully requests that the Court reconsider its decision granting summary judgment to Soelect on this issue, and instead find that a dispute of material fact remains as to whether HMC conducted "characterization testing" of the Soelect sample in violation of the MTA.

## IV.    CONCLUSION

For the foregoing reasons, HATCI respectfully requests that the Court reconsider the MSJ Order insofar as it granted summary judgment to Soelect on the question whether HMC conducted characterization testing, in the form of SEM imaging, in violation of the MTA.


Dated:  July 12, 2024                              Respectfully submitted,

                                                    */s/ Matthew W. Walch*
                                                   Matthew W. Walch (Bar No. 6226308)
                                                   Gary Feinerman (Bar No. 6206906)
                                                   LATHAM & WATKINS LLP
                                                   330 North Wabash Avenue, Suite 2800
                                                   Chicago, IL 60611
                                                   Telephone:  (312) 876-7700
                                                   matthew.walch@lw.com
                                                   gary.feinerman@lw.com

                                                   *Counsel for Hyundai America Technical Center, Inc.*